NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DELCIA F., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, Z.M., *Appellees*.

No. 1 CA-JV 18-0390
FILED 3-14-2019

Appeal from the Superior Court in Yavapai County
No. V1300JD201780007
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Lauren J. Lowe
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Peter B. Swann joined.

---

**T H O M P S O N**, Judge:

¶1        Delcia F. ("mother") appeals the decision of the juvenile court terminating her parental rights to Z.M. (the "child"), arguing the court erred in finding that the Department of Child Safety ("DCS") made reasonable efforts to provide her with rehabilitative services.  For the following reasons we affirm the juvenile court's order.

### FACTUAL AND PROCEDURAL HISTORY

¶2        DCS became involved in November 2016, after a domestic violence incident between mother and the child's father in which the child was accidentally struck by father.[1] Following a team meeting it was determined that the child, who was two months old at the time, would remain in the care of mother, and mother would participate in services. Father was to have no contact pursuant to a no-contact order. Mother only intermittently participated in services and she and father continued to maintain contact and engage in domestic violence.

¶3        After police were called to a March 2017 altercation between mother and a friend, DCS learned that mother had been leaving the child in the care of the friend for weeks at a time and was not providing the child with formula, diapers or basic care. Additionally, DCS could not locate either mother or father, and it was later discovered that mother had fled to California following the altercation with the friend. DCS then took the child into custody and he was found dependent later that month.  After mother returned from California, she admitted to DCS that she used methamphetamine, heroin, cocaine, and marijuana and that she could not meet the child's needs at that time.

¶4        Thereafter, DCS implemented reunification service including a psychological evaluation, neuropsychological evaluation, medication monitoring, individual counseling, substance-abuse assessment, random

---

[1] Father is now deceased and is not a party to this appeal.

urinalysis testing, hair-follicle testing, Family Treatment Court, domestic-violence education, parent-support services, parenting classes, and supervised visitation with coaching. Mother was also provided transportation to and from all services. DCS informed mother that in order for her to reunify with the child she needed to demonstrate sobriety and a clean lifestyle, healthy and safe parenting skills, address her mental health issues, demonstrate good judgment when parenting the child and learn to communicate with the child's father in a healthy and productive manner.

¶5 Mother participated in a psychological evaluation with Dr. Stephen Gill in which she disclosed that she had been diagnosed at birth with fetal alcohol effect, bi-polar disorder, attention deficit hyperactivity disorder, and post-traumatic stress disorder. Although mother had previously been prescribed medication for her mental health disorders, she reported to the doctor that she preferred to use marijuana to treat her symptoms but did not have a medical marijuana card.

¶6 Dr. Gill reported that mother scored in the borderline to low-average range in intellectual functioning and diagnosed her with neurodevelopmental disorder associated with prenatal alcohol exposure. He also diagnosed mother with a cannabis-related disorder, methamphetamine-related disorder, and dependent personality disorder. The doctor opined that mother's prognosis was "extremely guarded," and that it was highly unlikely that she would be able to discharge her parental responsibilities in the future.

¶7 Mother also completed the ordered hair-follicle test and tested positive for methamphetamine, codeine, tetrahydrocannabinol (THC), and cocaine. She also participated in random urinalysis testing and tested positive for THC, amphetamine, methamphetamine, and alcohol regularly. Mother was referred for substance abuse classes but refused to go.

¶8 Mother was also given a referral to Spectrum Counseling. Although mother completed the intake, she refused to participate in counseling and she was closed out of the service. It was also suggested by the psychiatrist at Spectrum that she receive prescription medication for her psychological disorders, but mother again insisted that she preferred to use marijuana even though she did not have a medical marijuana card.

¶9 Mother was provided a parent aide during supervised visits from May 2017 through November 2017. However, mother's phone number changed frequently, and the parent aide was unable to maintain

contact with her between May and July. Although mother consistently participated in this service from July through October, the parent aide repeatedly had to change the method in which lessons were delivered to try and help mother progress through the program. Additionally, the parent aide reported multiple issues during these visits including mother providing a dirty bottle to feed the child and mother waking the child from his nap, so she could play with him.

¶10        In November 2017, Mother entered a 30-day drug rehabilitation program. After the rehabilitation program mother attended another visit with the parent aide then again entered another 30-day rehabilitation program. Following the second rehabilitation program, mother did not make contact with the parent aide to continue that service. Mother did, however, continue to have supervised visits with the child.

¶11        In May 2018, mother completed another neuropsychological evaluation with Dr. Gill. Mother reported to the doctor that she did not learn anything from her parenting course. Following this evaluation, the doctor opined that a child in the care of mother would be at serious risk. Regarding mother's future ability to care for the child the doctor opined that "there is no indication that she can learn when she has not been able to from classes and 1:1 with a parent specialist."

¶12        In May 2018, DCS filed a motion to terminate the parent child relationship. DCS alleged that mother was unable to discharge her parental responsibilities because of mental illness and mental deficiency; chronic abuse of dangerous drugs and controlled substances; out of home placement for nine months or longer; and out of home placement for six months or longer. Following the evidentiary hearing, the court severed mother's rights to the child finding DCS had proven all allegations in the motion for termination. The court also determined that the best interests of the child would be served by terminating the parent-child relationship. Mother appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 8-235(A) (2019), 12-120.21(A)(1) (2019), and 12-2101(B) (2019).[2]

---

[2] We cite to the current version of any statute unless the statute unless the statute was amended after the pertinent events and such amendment would affect the result of this appeal.

## DISCUSSION

**¶13** A parent's right to custody and control of his own child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). Severance of a parental relationship may be warranted where the state proves one of A.R.S. § 8-533's statutory grounds for termination by "clear and convincing evidence." *Id.* at 248-49, ¶ 12; A.R.S. § 8-863(B) (2019). "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25 (2005). Additionally, the court must also determine what is in the best interests of the child by a preponderance of the evidence. *Id.* at 283, 84, ¶¶ 17, 22.

**¶14** "[W]e will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We do not reweigh the evidence, but "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶15** On appeal, mother argues that the juvenile court erred in finding that DCS had provided appropriate reunification services.[3] Specifically, mother argues that DCS did not tailor the parent-aide services to her disabilities and instead had her watch videos of the parenting curriculum. Mother argues that because of this format she was not able to ask questions and did not receive one-on-one coaching. The evidence does not support this conclusion.

**¶16** Prior to terminating a parent's rights under A.R.S. § 8-533(B)(8), DCS must make diligent or reasonable efforts to provide reunification services to the parent. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). Diligent efforts exist when DCS provides the parent with "the time and opportunity to participate in programs designed to help her become and effective parent." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). However, DCS is not required to provide every conceivable service or to ensure that the parent participates in every service that it offers. *Id.* Additionally, it is only required to provide services that have a reasonable prospect of success.

---

[3] Mother does not challenge the juvenile court's best interests finding and we therefore do not address that argument. *See Michael J. v. Ariz. Dep't of Econ Sec.*, 196 Ariz. 246, 249, ¶ 13 (2000).

*Mary Ellen C.*, 193 Ariz. at 192, ¶ 34. Nor is DCS required to undertake rehabilitative measures that are futile. *Yavapai Cty. Juv. Action No. J-9956*, 169 Ariz. 178, 180 (App. 1991).

¶17 During the first meeting with the parent aide, mother stated that she learned best by "video, doing tasks and one-on-one discussion." This is exactly what mother was provided by the parent aide. After watching a video of the curriculum, the parent aide would discuss the video with mother and how it applied to her. Additionally, the parent aide provided coaching throughout the visits and would help mother to care for the child and explain why certain things, such as diaper changes and clean bottles were necessary and what was required of mother to parent the child. Furthermore, the parent aide switched to the video method to provide curriculum after mother failed to complete and return the written homework assignments. Thus, contrary to mother's assertions, the parent aide did tailor the services to mother's needs.

¶18 Furthermore, even with the parent aide tailoring to the needs of mother, she still was unable to meet the necessary requirements for reunification. Mother continued to test positive for THC, alcohol, and methamphetamine throughout the dependency. Mother also refused to treat her bi-polar disorder with medication and refused to attend substance abuse counseling or mental health counseling. And Dr. Gill opined in the May 2018, psychological evaluation that "there is no indication that she can learn when she has not been able to from classes and 1:1 with a parent specialist." Thus, any additional services would have been futile. As such, we affirm the juvenile court's order.

## CONCLUSION

¶19 For the foregoing reasons we affirm the juvenile court's order terminating the parent child relationship.



AMY M. WOOD • Clerk of the Court
FILED: AA